UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| NAYON M. MARRERO, on behalf of himself and all other similarly situated, | § § § |
| Plaintiff, | § § Case No. 6:20-cv-00676 |
| v. | § § § |
| CENTRAL TEXAS COLLEGE, | § § § |
| Defendant. | § § § |

## CLASS ACTION COMPLAINT

Plaintiff Nayon M. Marrero ("Plaintiff"), on behalf of himself and all others similarly situated (collectively "Class," as more fully defined below), hereby brings this class action complaint against Defendant Central Texas College ("CTC" or "Defendant"). Plaintiff states the following allegations upon personal knowledge as to his own acts and upon information and belief, including his attorneys' investigation as to all other matters.

### I. NATURE OF THE ACTION

1. The class action arises out of CTC's failure to refund tuition and fees after curtailed and suspended on campus classes during the Coronavirus pandemic of 2019 ("COVID-19"). Plaintiff and all others similarly situated are college students who paid CTC tuition and fees for on campus educational experience revolving around personal interactions with faculty and students from different backgrounds and perspectives in in-person classes, face-to-face peer and faculty interactions, and

access to on campus supports, such as room and board, career counseling, gyms, recreational amenities, student centers, libraries, dining halls, labs, campus events, and social and educational events. Even before COVID-19, Plaintiff and Class were already paying tuition and fees for on campus educational experience even at the risk of saddling student loan debt post-graduation. Plaintiff and Class nevertheless paid the tuition and fees precisely for the advantages an on campus educational experience offers that no online educational system can offer or replace.

2. CTC is a community college in Killeen, Texas with a total enrollment of approximately 15,672[1] students. While it charged Plaintiff and Class full tuition and fees for the on campus educational experience, it failed to deliver the full experience.

3. Due to the Coronavirus in or around Spring 2020, CTC shifted its on campus educational programs to online class instruction only. Plaintiff and Class thus lost access to the associated benefits of a traditional on campus educational experience. The educational experience students received comprised primarily of online classes through Google or Zoom was subpar compared to the on campus educational experience received prior. The loss of access to on campus learning and its associated benefits severely altered Plaintiff's and Class's educational experience.

4. While Plaintiff and Class thus paid CTC high tuition and fees for the on campus educational experience, Plaintiff and all others similarly situated did not obtain those benefits during the 2020 Spring semester. CTC issued no tuition or fee refund to students as a result of the altered educational system. Plaintiff and Class therefore now seek to recover the prorated diminished value of their educational

---

1 "CTC College in Killeen, TX | US News Education." U.S. News & World Report, U.S. News & World Report, July 6, 2020, www.usnews.com/education/community-colleges/central-texas-college-CC01216.

experience in the switch from traditional on campus learning to online instructional classes.

## II. PARTIES

5. Plaintiff resides in Killeen, Texas, and is a student at Texas A&M University in College Station, Texas. Plaintiff paid tuition and fees to CTC in Spring 2020 for on campus math and science courses not offered at Texas A&M University. Prior to CTC's switching to online courses in Spring of 2020, Plaintiff achieved high grades and anticipated opportune career prospects. CTC's credits and grades were transferrable to his Texas A&M University degree. After the switch, Plaintiff's grades dropped dramatically in the online learning environment, jeopardizing Plaintiff's anticipated career prospects.

6. At all relevant times, Defendant CTC is a community college in Killeen, Texas providing on campus educational services to various types of students, mainly military service members deployed around the world wishing to return to school to obtain their college degrees in the hopes of building a brighter future. No registered agent exists for Defendant, and service of process will be effected on the Texas Secretary of State.

## III. JURISDICTION AND VENUE

7. This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) because the matter in controversy exceeds the sum value of $5,000,000.00, exclusive of interests, costs, and fees, and is a class action in which one or more of the Class Members are citizens of a State different from CTC.

8. Defendant conducts business within this district within the State of Texas, and the Court has personal jurisdiction over Defendant.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the conduct complained of herein occurred within this District; and because Defendant conducted business within this district at all times relevant.

## IV.  FACTUAL ALLEGATIONS

10. CTC is a community college in Killeen, Texas.

11. In 1965, the citizens of CTC joined together to authorize the building of CTC to serve the western section of Bell County; Burnet, Coryell, Hamilton, Lampasas, Llano, Mason, Mills and San Saba counties; portions of McCulloch and Williamson counties; as well as Fort Hood and the state correctional facilities in Gatesville.

12. The CTC campus was constructed on 560 acres of land donated by Fort Hood through the Department of Education and with funds supplied through a local $2 million bond issue.

13. CTC College, under Section 130.04 of the Texas Education Code, opened its doors with an initial enrollment of 2,068 students in the fall of 1967. The number of students and the locations of offerings have steadily increased since that time to an annual enrollment of well over 150,000.

14. Since first being awarded accreditation in 1969, CTC has maintained its institutional accreditation status with the Southern Association of Colleges and Schools Commission on Colleges, and was reaffirmed most recently in June 2015.

15. Due to its proximity to the US Army installation at Fort Hood, CTC has evolved from a small junior college into a community college catering to the military. CTC instituted classes and programs on Fort Hood in 1970 and in Europe in 1974. Success with the military led to branch campuses at military installations such as Fort Leonard Wood in Missouri, South Korea, and on-ship with the Atlantic and Pacific Fleets of the US Navy in 1976. By the early 1980s, CTC offered classes to military personnel in the Pacific Command, Alaska, and Panama. CTC also

offered classes for the Texas Department of Criminal Justice in the prisons at Gatesville, Texas, in 1976.

16. Today, the College consists of five administrative units referred to as campuses: the Central Campus and Service Area, the Continental Campus, the Europe Campus, the Fort Hood Campus, and the Navy Campus. Of these, the Central Campus and Service Area and the Fort Hood Campus operate within Texas. While some campuses, like the Navy Campus, offer programs only for military personnel, others enroll military, civilians and incarcerated students.

17. CTC offers a comprehensive array of associate degrees, vocational-training, and adult continuing education and high school class room programs in more than 150 locations.

18. Students enrolled at CTC may select a degree plan from Associate of Arts degree programs, Associate of Science degree programs, Associate in Applied Science degree programs, or Associate of Arts in General Studies. There are more than 40 certificate programs.

19. CTC's architectural environment is also a major part of the students' educational experience inspiring respect and love of learning and motivating them to do achieve at their highest level. At the main campus in Killeen, the central courtyard has a memorial statue to Lyndon Baines Johnson, and a fountain by which are metal markers indicating the boundary between Bell and Coryell counties. The College's main library is named in honor of Oveta Culp Hobby. The College's older buildings are built in Spanish Colonial Revival Style.

20. The College is also home to the beautiful music station KNCT-FM.

21. CTC also provides a wide range of education and training opportunities for those students who do not select a degree or certificate option. It provides comprehensive programs and services for special populations: disability support services, single parent/homemaker support services and nontraditional career

support services as well as tutoring. To meet occupational training needs, CTC further offers a variety of professional development and job-related skills programs such as basic literacy, leadership skills, foreign language skills and occupational skills programs.

22. In response to COVID-19, on or around March 11, 2020, while CTC students were on spring break, the College announced spring break would be extended by an additional week and thereafter suspended all in- person classes for two weeks.

23. Then, between approximately late March through early April 2020, CTC shifted to an entirely online instruction format. Additionally, for three weeks, all student meetings and activities were canceled. Days later, the College announced that all events and large gatherings were also to be suspended.

24. As a result of these decisions, since spring break began on in early March 2020, Plaintiff and other CTC students have been denied the bargained-for in- person instruction and access to facilities, technology, services, resources, and other associated benefits for which Plaintiff and Class members contracted when they paid Defendant tuition and mandatory fees for the Spring 2020 semester.

25. Several studies have shown that online learning is not as effective as traditional in-person instruction. One study conducted by the Community College Research Center which compared online and traditional in-person learning found that online learning is not as effective as traditional in-person learning.[2] Those who completed the online courses earned lower grades than those who attended classes in-person, which was in fact Plaintiff's exact experience. The study also concluded that online courses may exacerbate achievement gaps between groups of students.

---

2 https://ccrc.tc.columbia.edu/publications/what-we-know-online-course-outcomes.html

26. Plaintiff, who had before maintained excellent grades, had difficulty learning in a pure online environment, causing his grades to suffer as a result and jeopardizing his possible job prospects.

27. Plaintiff has not attended any in-person classes since early March. Instead, all his classes have been moved online.

28. Plaintiff has neither received nor been offered any refund or reimbursement for the tuition and fees that he paid for the Spring 2020 semester.

29. Because Plaintiff struggles with the online class format, Plaintiff requested the opportunity to drop online classes, but was refused in being told that doing so would result in no refund of tuition and fees. As a result, Plaintiff's grades suffered.

30. But, Plaintiff and Class members did not contract and pay CTC simply for to receive academic credit on their transcripts or to have access to online classes—they contracted and paid to receive the holistic, integrated, in-person educational experience which CTC offered. Since the campus closure and forced shift to online learning, not to mention the full-week reduction in the Spring 2020 semester, students have not received such an education.

## V.   CLASS ACTION ALLEGATIONS

31. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of herself and the following Class:

> All persons who (i) paid tuition, mandatory fees, and/or other costs to CTC for an in-person class or classes to be conducted during the Spring 2020 semester and/or subsequent terms, and (ii) did not receive the in-person education for which they paid.

32. The following persons and entities are excluded from the Class: Defendant and their officers, directors, employees, subsidiaries, and affiliates; any

members of any Board of CTC; judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the class definition, including by proposing additional subclasses, based upon discovery and further investigation.

33. A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Defendant. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

34. Numerosity. In accordance with Fed. R. Civ. P. 23(a)(1), the members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiff, the Class is presumed to number more than 100,000 people and is easily ascertainable through enrollment and financial records maintained by Defendant.

35. Commonality and Predominance. In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

    a. whether Defendant accepted money from the Class;
    b. whether Defendant retained money from the Class for services they did not render, or only partially rendered;
    c. whether Defendant entered into a contract with the Class;
    d. whether Defendant breached their contract with the Class;

  e. whether Defendant benefitted from the money they accepted from the Class;

  f. whether the value of educational and other services Defendant provided to the Class were commensurate with their price;

  g. whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

  h. whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

  i. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

  36. **Typicality.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for tuition costs associated with the Spring 2020 semester but were not provided the services that those costs were meant to cover. Each suffered damages in the form of their lost tuition and other monies paid to Defendant, and the claims all arise from the same CTC practices and course of conduct. There are no defenses available that are unique to the Plaintiff.

  37. **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiff has retained counsel competent and experienced in complex class action litigation, and he intends to prosecute this action vigorously on behalf of his fellow Class members. Plaintiff has no interests that are antagonistic to those of the Class and he will fairly and adequately protect the proposed Class' rights along with counsel.

## VI.   <u>CAUSES OF ACTION</u>

### COUNT I: BREACH OF CONTRACT

### (ON BEHALF OF THE PLAINTIFF AND THE CLASS)

38. Plaintiff repeats and alleges the allegations in Paragraphs 1-33 as if fully alleged herein.

39. Plaintiff brings this claim individually and on behalf of the other members of the Class.

40. Plaintiff and the other members of the Class entered into binding contracts with CTC through Defendant, for which Defendant were the direct beneficiary, which provided that Plaintiff and the other members of the Class would pay tuition and fees, to Defendant, in exchange for on campus educational, extracurricular, and social facilities and experiences. Specifically, CTC charged Plaintiff $360.00 each for General Botany and NCBO Beginning Algebra and $270 each for Fine Arts Appreciation, Contemporary Mathematics, and Public Speaking, all in the Spring 2020, which Plaintiff fully and promptly paid to CTC.

41. These contracts were formed by multiple documents when students bid by formally registering for courses offered by Defendant, in light of the quoted tuition and fees pertaining to such registration, and Defendant thereafter accepted those bids, or registrations, by sending bills for tuition and fees to Plaintiff and Class members. At this time, written contracts arose.

42. As part of their contracts with the Defendant, and, in exchange for adequate consideration that Plaintiff and members of the proposed Class provided, Defendant promised to provide on-campus educational services to Plaintiff and Class members.

43. Ever since closing its campus in March 2020, Defendant has failed to provide the services obligated to perform under the contract with Plaintiff and the

proposed Class. Defendant has retained tuition and fee payments paid by Plaintiff and other members of the Class without providing them the promised benefits.

44. By contrast, Plaintiff and the other members of the Class fulfilled their end of the bargain when they paid monies due and owing for their full tuition and fees.

45. The tuition and fee payments that Plaintiff and the proposed Class paid were intended to cover in-person educational and extra-curricular services. Defendant, however, has improperly retained the funds Plaintiff and the proposed Class paid without providing them the services and other benefits due under the contracts.

46. Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of paid tuition, fees, and other expenses collected by Defendant for services Defendant failed to deliver fully.

47. Defendant's performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, Defendant would nevertheless be required to return funds received for services and/or goods not provided.

48. COUNT II: RESTITUTION BASED ON QUASI-CONTRACT

49. (ON BEHALF OF THE PLAINTIFF AND THE CLASS)

50. Plaintiff repeats and allege the allegations in Paragraphs 1-33 as if fully alleged herein.

51. Plaintiff brings this claim individually and on behalf of the other members of the Class in the alternative to the breach of contract claim brought in Count I.

52. Plaintiff and other members of the proposed Class conferred a benefit or enrichment on Defendant by paying tuition and fees to Defendant, which was beneficial to Defendant, at the expense of Plaintiff and the other members of the Class.

53. Plaintiff and the other members of the Class paid tuition and fees and did not receive the full benefit of their bargain from Defendant, thus resulting in their damages.

54. Defendant has retained the benefit paid by Plaintiff and the Class despite their failure to provide the services for which the benefit was paid.

55. There is no justification or cause for Defendant's failure to return the portion of the tuition and fees that Defendant has unjustifiably kept for themselves even though they failed to complete the services for which Plaintiff and the Class provided the funds to Defendant.

56. Accordingly, Defendant has been unjustly enriched and should pay as restitution a prorated portion of the funds that Plaintiff and the proposed Class paid for tuition and fees for the duration of the campus closure.

## COUNT II: CONVERSION
## (ON BEHALF OF THE PLAINTIFF AND THE CLASS)

57. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-33 as if fully alleged herein.

58. Plaintiff brings this claim individually and on behalf of the Class.

59. Plaintiff and the other members of the Class have a right to the in person educational and extracurricular services that they were supposed to be provided in exchange for their payments to Defendant.

60. Defendant intentionally interfered with the rights of Plaintiff and the other members of the proposed Class when they retained payments intended to pay for on campus classes, facilities, and activities, while moving all classes to an online,

remote learning format and discontinued or services and access to facilities for which Plaintiff and the members of the proposed Class had paid.

61. Defendant deprived Plaintiff and the other members of the Class of their tuition and fee payments or of the right to the services for which their payments were intended to be used.

62. Class members demanded the return of the prorated, unused tuition and fee payments for the duration of the campus closure.

63. Defendant's retention of the tuition and fees paid by Plaintiff and the other members of the Class without providing the services for which they paid deprived Plaintiff and the other members of the Class of the benefits for which the payments were paid. This interference with the services for which Plaintiff and the other members of the Class paid damaged Plaintiff and the other members of the Class in that they paid for services that were not and will not be provided.

64. Plaintiff and the other members of the Class are entitled to the return of prorated unused portion of the tuition and fees paid, through the end of campus closure and forced transition to online learning.

## VII.   **DEMAND FOR JURY TRIAL**

65. Plaintiff and Class hereby demands trial by jury on all issues so triable.

## VIII.   **REQUEST FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, individually and on behalf of the members of the Class, respectfully requests that Defendant be cited to appear and that the Court enter judgment in their favor and against Defendant as follows:

>   a. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing the undersigned counsel as Class Counsel and Local Counsel;

b. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

c. Declaring that Defendant wrongfully kept monies paid by the Class;

d. Awarding injunctive relief and restitution as permitted by law or equity;

e. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and

g. Awarding such other and further relief as the Court deems just and proper.

Dated: July 24, 2020.                           Respectfully submitted,

                                       By: /s/ Ramona V. Ladwig
                                            Ramona V. Ladwig, Esq.
                                            Bar No. 24092659
                                            **KAZEROUNI LAW GROUP, APC**
                                            1910 Pacific Ave, Suite 14155
                                            Dallas, TX 75201
                                            Phone: (214) 880-6362
                                            Fax: (800) 635-6425
                                            Email: ramona@kazlg.com

                                            *Attorney for Plaintiff*